**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

15 CV 00177

------------------------------------------------------------x
SANTOS ACOSTA JR.,                                          :  Civil Action No.
                                                            :
                              PLAINTIFF,                    :  **COMPLAINT**
                                                            :
v.                                                          :
                                                            :  Plaintiff Demands
BOSTON PROPERTIES, INC.,                                    :  a Trial by Jury
BP MANAGEMENT,                                              :
MORT ZUCKERMAN, individually,                               :
and KRIS KNUTSON, individually.                             :
                                                            :
                              DEFENDANTS.                   :
------------------------------------------------------------x

RECEIVED JAN -9 2015 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff SANTOS ACOSTA JR. ("Mr. Acosta" or "plaintiff"), by his attorneys, LEVINE & BLIT, PLLC, complaining of defendants BOSTON PROPERTIES, INC. ("BPI"), BP MANAGEMENT ("BPM"), MORT ZUCKERMAN ("ZUCKERMAN"), and KRIS KNUTSON ("KNUTSON"), collectively "defendants"), respectfully alleges upon information and belief:

NATURE OF THE ACTION

1.      This action is brought to remedy unpaid overtime wages, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("Labor Law"), illegal wage deductions, in violation of the Labor Law, and failure to provide meal periods, in violation of the Labor Law.

2.      Defendants' actions were unlawful and plaintiff seeks injunctive and declaratory relief, monetary, compensatory and punitive damages, liquidated damages, interest, attorneys' fees, costs, and other appropriate legal and equitable relief pursuant to the FLSA and Labor Law, and such other and further relief as the Court deems necessary and proper.

JURISDICTION AND VENUE

3.      Jurisdiction of this Court is proper under 28 U.S.C. §1331, because the matter in controversy is a civil action arising under the Constitution, laws or treaties of the United States.

1

4.      Supplemental jurisdiction over plaintiff's state law claims is proper under 28 U.S.C. §1367.

5.      Venue of this action in the Southern District of New York under 28 U.S.C. §1391 is appropriate as defendants have their principle place of business within the district, and that the Southern District is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

6.      Mr. Acosta is a Chauffeur, and a resident of the County of Westchester and the State of York.

7.      Upon information and belief, Defendant Zuckerman is the Chairman, officer, shareholder and control person of BPI and BPM. Upon information and belief, Zuckerman maintains personal residence in New York County.

8.      Upon information and belief, Defendant Knutson is a Managing Director and control person of BPI and BPM. Upon information and belief, Knutson maintains personal residence in New York.

9.      Defendant BPI is a domestic business corporation with a principle place of business at 599 Lexington Ave., New York, NY.

10.     Defendant BPM is a domestic business corporation with a principle place of business at 599 Lexington Ave., New York, NY.

11.     At all times relevant to this action, defendants were "employers" of Plaintiff within the meaning of the Labor Law§§ 190(3) and 651(6) and FLSA §203(d).

12.     At all times relevant to this action, Defendant WPI has been an enterprise engaged in interstate commerce within the meaning of the FLSA insofar that it: (1) has had employees

engaged in commerce or in the production of goods for commerce within the meaning of the FLSA insofar that it: has had employees engaged in commerce or in the production of goods for commerce, and handles, sells or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (2) has had annual gross volume of sales not less than $500,000.

13. At all times relevant to this action, Defendant BPM has been an enterprise engaged in interstate commerce within the meaning of the FLSA insofar that it: (1) has had employees engaged in commerce or in the production of goods for commerce within the meaning of the FLSA insofar that it: has had employees engaged in commerce or in the production of goods for commerce, and handles, sells or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (2) has had annual gross volume of sales not less than $500,000.

14. At all times relevant to this action, plaintiff was an "employee" of defendants within the meaning of the Labor Law and FLSA, and entitled to protection. At all times relevant to this action, Plaintiff performed services as employee for defendants in New York.

15. At all times relevant to this action, plaintiff had the skills, experience and qualifications necessary to work in her employment position for the defendants.

## FACTUAL ALLEGATIONS
**BACKGROUND FACTS**

16. Mr. Acosta began his employment tenure with defendants in or about October, 2013. At all times relevant to this complaint, Mr. Acosta was employed by defendants as a Chauffeur, and was a non-exempt employee under the FLSA and Labor Law.

17. At all times relevant to this complaint, Mr. Acosta's job duties included cleaning and maintaining the car that he would use to drive, and driving Zuckerman from place to place at his command.

3

18. At all times relevant to this complaint, Zuckerman and Knutson controlled all aspects of the terms and conditions of Mr. Acosta's employment, including the establishment of his wages and benefits, and the direction as to his daily work activities and work hours.

19. Mr. Acosta's regular work schedule included four straight days of work, followed by four days off.

20. Mr. Acosta's regular work day began at 6AM, when he would begin prepping the car to pick up Zuckerman, usually by 7AM. The prep work would include washing the car, fueling up the car, and purchasing various items to have waiting for Zuckerman upon pickup.

21. Mr. Acosta did not have a regularly scheduled end-of-work time, and his work day would end whenever Zuckerman would dismiss him.

22. Oftentimes, Zuckerman would have Mr. Acosta work into the evening, night, or even early morning. In fact, it was not uncommon for Mr. Acosta to work between twelve (12) and eighteen (18) hours in a day.

23. As well, though Mr. Acosta lived in Westchester County, he had to be available twenty four hours a day, seven days a week if Zuckerman called him into work. On several occasions, Zuckerman called Mr. Acosta into work overnight, at 1AM or 2AM, well before his regularly scheduled 6am work time.

24. During the work day, Mr. Acosta had to be available at all times for Mr. Zuckerman, or anyone else assigned for him to drive on a particular day.

25. Though Mr. Acosta worked well in excess of ten (10) hours a day, he was not given a scheduled meal break upon hire.

26. Mr. Acosta's starting pay rate with defendants was $1,600 per week. His ending pay rate with defendants was $1,700 per week, after a raise in his salary given to him by defendants on or

4

around January, 2014.

27. Mr. Acosta's hiring letter stated that the hours that he may work in a workweek may fluctuate, and that the $1,600 (later $1,700) was a fixed amount that he would receive as straight time pay for whatever hours that he worked in a particular work week, and that hours over forty would be compensated at one-half time his regular rate of pay for that particular workweek.

28. Mr. Acosta's hiring letter also stated that, "When called upon to work a day you were not previously scheduled for, you will receive $300 coverage shift differential in addition to being paid for the hours that you work during that day."

**FACTS RELATED TO UNPAID OVERTIME WAGES**

29. Throughout his employment tenure with defendants, Mr. Acosta regularly worked over forty hours in a workweek, but was not paid the statutorily required overtime wages for hours worked over forty.

30. Unless due to illness, vacation, or scheduled day off, Mr. Acosta almost never worked forty hours or less in a workweek.

31. The limited records that plaintiff maintained illustrate that defendants regularly violated federal and local overtime laws as to Mr. Acosta.

32. For example, for the two week pay period beginning 2/22/14 and ending 3/7/14, Mr. Acosta worked 109 hours for defendant, or a total of 29 hours overtime. Defendants compensated Mr. Acosta only $279.55 in total for his 29 overtime hours, well below the overtime compensation required under the FLSA and Labor Law.

33. Interestingly, Mr. Acosta's Earnings Statement from defendants did not record the total hours of overtime that plaintiff worked during that pay period, nor his overtime rate. The Earnings Statement merely included the lump sum payment of $279.55 for overtime pay, without any justification for that calculation.

34.   The $279.55 which Mr. Acosta received for overtime pay for the two week pay period beginning 2/22/14 and ending 3/7/14 was well below the statutory requirements under both the FLSA and Labor Law, even if defendants claim the right to calculate Mr. Acosta's overtime wages using the fluctuating work week method of calculation.

35.   Mr. Acosta should have been paid 1 ½ times his regular rate of pay for each hour over forty in each work week, based on his regular rate of pay of $40/hour, or at least $1,740 in overtime pay alone for the two week period ending 3/7/14.

36.   As another example, for the two week pay period beginning 9/20/14 and ending 10/3/14, Mr. Acosta worked 104 hours for defendant, or a total of 24 hours overtime.   Defendants compensated Mr. Acosta only $184.21 in total for his 24 overtime hours.

37.   Interestingly, Mr. Acosta's Earnings Statement from defendants did not record the total hours of overtime that plaintiff worked during that pay period, nor his overtime rate.   The Earnings Statement merely included the lump sum payment of $184.21 for overtime pay, without any justification for that calculation.

38.   The $184.21 which Mr. Acosta received for overtime pay for the two week pay period beginning 9/20/14 and ending 10/3/14 was well below the statutory requirements under both the FLSA and Labor Law, even if defendants claim the right to calculate Mr. Acosta's overtime wages using the fluctuating work week method of calculation.

39.   Mr. Acosta should have been paid 1 ½ times his regular rate of pay for each hour over forty in each work week, based on his regular rate of pay of $42.50/hour, or at least $1,530 in overtime pay alone for the two week period ending 10/3/14.

40.   The above two examples illustrate what Mr. Acosta has experienced during his entire employment tenure with defendants. Just about each week of his employment tenure, defendants have failed to pay plaintiff his statutorily required overtime wages under the FLSA and Labor

Law, though he has regularly worked over forty hours in a workweek.

41.  The burden to keep proper and complete wage and hour records, as per the FLSA and Labor Law, is on defendants. Therefore, a complete accounting of the overtime wages owed to plaintiff can be calculated upon review of defendants' records.

42.  Defendants cannot apply the fluctuating workweek method of calculating Mr. Acosta's overtime wages to Mr. Acosta throughout his employment tenure with defendants. In fact, defendants intentionally violated the 'fluctuating workweek' regulations under the FLSA and Labor Law for all of the following reasons, among others:

- Plaintiff was not hired to work a 'fluctuating workweek'. In fact, plaintiff was hired to work four days per week at ten (10) hours per day.
- Plaintiff did not work a 'fluctuating workweek', in that plaintiff almost never worked less than forty (40) hours in a workweek. Therefore, the fluctuating workweek method should not have been applied to plaintiff.
- Plaintiff did not receive a 'fixed salary'. In fact, defendants paid plaintiff a $300/day shift differential for days in which plaintiff was called into work on his scheduled off days.
- Defendants intentionally did not pay plaintiff one half times his regular rate of pay for each hour worked over forty, even though defendants claimed to apply the fluctuating workweek method to calculate plaintiff's overtime compensation.

43.  Accordingly, as the fluctuating workweek method was the improper method to calculate plaintiff's overtime compensation during his employment tenure with defendants, the law requires that plaintiff be paid one and one half times his regular rate of pay for hours worked over forty (40) in a workweek.

44.  On one occasion, and one occasion alone throughout plaintiff's employment tenure, defendants paid plaintiff his proper overtime wages. But, in the pay periods immediately thereafter, defendants deducted from plaintiff's wages the monies paid to plaintiff for overtime so that the proper payment of overtime wages was fully reversed by defendants.

45. Specifically, for the two week period ending 6/27/14, defendants paid plaintiff $2,454.38 in overtime wages for 38.5 overtime hours worked, at a rate of $63.75 per hour. This payment for overtime wages appropriately paid plaintiff one and one half times his regular rate of pay for each overtime hour worked.

46. However, in the following pay periods, defendants deducted from plaintiff's wages this overtime payment, effectively taking back the amount of proper overtime pay that defendants paid plaintiff for week ending 6/27/14.

47. These deductions from plaintiff's wages were neither for plaintiff's benefit nor for a deduction allowable by law.

48. In addition to the above, plaintiff was denied meal breaks throughout the entirety of his employment tenure with defendants, despite the fact that plaintiff regularly worked more than six (6) hours in a day, and worked over the noon-time meal period.

49. Plaintiff complained regularly to Knutson and Zuckerman regarding defendants' failure to properly pay overtime wages and defendants' failure to provide plaintiff meal breaks. Defendants refused to correct the unlawful treatment targeted at plaintiff with respect to his overtime wages and meal breaks.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
(Unpaid Overtime Wages Under the FLSA)

50. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. At all times relevant to this action, defendants were employers engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207(a).

52. Defendants failed to pay plaintiff proper overtime wages, as defined by the FLSA, for all

hours worked in excess of forty in a work week.

53. Defendants failure to pay overtime premiums was willful.

54. As a result of defendants' FLSA violations, plaintiff is entitled to recover from defendants, jointly or severally, his unpaid overtime wages, at one and one half times his regular rate of pay for all hours worked over forty in a workweek, in a total amount to be determined upon review of plaintiff's complete payroll records, and an additional equal amount representing the statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
(Unpaid Overtime Wages Under the Labor Law)

55. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56. At all times relevant to this action, plaintiff was employed by defendants within the meaning of Labor Law §§ 2 and 651.

57. Defendants failed to pay plaintiff proper overtime wages, as defined by the Labor Law, for all hours worked in excess of forty in a work week.

58. Defendants failure to pay overtime premiums was willful.

59. As a result of defendants' Labor Law violations, plaintiff is entitled to recover from defendants, jointly or severally, his unpaid overtime wages, at one and one half times his regular rate of pay for all hours worked over forty in a workweek, in a total amount to be determined upon review of plaintiff's complete payroll records, and an additional equal amount representing the statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to Labor Law §§ 2 and 651.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
(Failure to Provide Meal Breaks as per Labor Law § 162)

60. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. At all times relevant to this action, plaintiff was employed by defendants within the meaning of Labor Law §§ 2 and 651.

62. Throughout the entirety of Plaintiff's employment tenure, defendants failed to allow plaintiff to take any meal breaks, though plaintiff regularly worked more than six (6) hours in a day, and worked over the noon-time meal period.

63. Defendants failure to provide plaintiff meal breaks was willful.

64. As a result of defendants' Labor Law violations, plaintiff is entitled to recover from defendants, jointly or severally, all damages under the Labor Law associated with defendants' refusal to provide him meal breaks.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT
(Illegal Wage Deductions under Labor Law)

65. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. As articulated above, throughout plaintiff's employment tenure defendants regularly failed and refused to pay plaintiff his proper overtime wages under the law.

67. Therefore, throughout plaintiff's employment tenure defendants regularly deducted from plaintiff's wages his proper overtime wages under the law.

68. Defendants' wage deductions were willful.

69. As a result of defendants' Labor Law violations, plaintiff is entitled to recover from

defendants, jointly or severally, all damages under the Labor Law associated with defendants' illegal wage deductions.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court enter an award:

(a) Declaring the acts and practices complained of herein are in violation of the FLSA and New York Labor Law;

(b) Directing defendants to pay plaintiff his actual damages in an amount to be determined at trial for unpaid wages and other remuneration, prejudgment interest, and liquidated damages in the amount of one hundred percent of the total due, as provided by the FLSA and New York Labor Law, for defendants' failure to pay proper overtime wages, failure to provide meal breaks, and illegally deductions from plaintiff's wages;

(d) Awarding Plaintiff punitive damages;

(e) Awarding plaintiff reasonable attorneys' fees, together with the costs and disbursements of this action; and

(f) Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, New York
January 7, 2015

Respectfully Submitted,

**LEVINE & BLIT, P.L.L.C.**

By: RUSSELL MORIARTY, ESQ. (RM 0224)

*Attorneys for Plaintiff, Santos Acosta*
Empire State Building
350 Fifth Avenue, Suite 3601
New York, NY 10118
Phone: (212) 967-3000
Fax:    (212) 967-3010

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SANTOS ACOSTA JR.,                                :         Civil Action No.
                                                  :
                                                  :
                              PLAINTIFF,          :
                                                  :
          v.                                      :
                                                  :
                                                  :
BOSTON PROPERTIES, INC.,                          :
BP MANAGEMENT,                                    :
MORT ZUCKERMAN, individually,                     :
and KRIS KNUTSON, individually.                   :
                                                  :
                              DEFENDANTS.         :
-----------------------------------------------------------------------x

---

# COMPLAINT

---

**LEVINE & BLIT, PLLC**
*Attorney(s) for Complainant*
SANTOS ACOSTA JR.
350 Fifth Avenue - Suite 3601
New York, New York 10118
Tel:  (212) 967-3000
Fax:  (212) 967-3010

---

To:

BOSTON PROPERTIES, INC.
BP MANAGEMENT
MORT ZUCKERMAN
KRIS KNUTSON
599 LEXINGTON AVENUE
NEW YORK, NY 10022